May it please the Court. My name is Richard Cole. I represent the appellants John Tolan and his wife. I'd like to reserve two minutes for rebuttal. This civil action stems from the defendant's mishandling of a court appearance with John Tolan in 1985. John was a white-collar executive residing in the town of Port Angeles when he was falsely labeled by the defendants as convicted of domestic violence, when he never had his constitutionally guaranteed day in court. We're here today because the District Court has denied John an opportunity to put his claims to the trier of fact. The original motion of summary judgment was brought just a few months after we received our final answer in this matter. The District Court's stopping of this matter at this point in time was premature. For the purposes of today's argument, we are left with the District Court's recognition that the criminal history information concerning Mr. Tolan was false. A defamatory comment was made. The District Court, however, erred in concluding at this early juncture that the defendants had a qualified privilege, afforded public entities in the exercise of their duties. The Court erred in that the privilege was not lost through abuse through either malice or reckless disregard for the truth. The Court erred in stating that the privilege was not lost through abuse from malice imputed under Washington law. It erred in declining to permit Mr. Tolan to amend his complaint to add Mrs. Woldridge. The defendants were merely negligent. Negligence cannot give rise to a Fourteenth Amendment violation. We know the issues. Which ones are you going to argue? Do you have all those issues to us? Are you going to argue all of them? We're going to argue these here five issues. Okay. The primary issue, I believe, before the Court today is whether or not the defendants had a qualified privilege. You said something when you were reciting that issue, the fact that it was the wrong timing of the judge to consider this. Did I hear that right? It was premature at this stage on summary judgment. Tell me why. Because one of the arguments we have under the fact that the qualified privilege was lost is that it was abused through reckless action of the defendants. Factually, they were reckless. Reckless equals malice in this situation. We've got three facts. We haven't had a chance to do discovery, complete discovery in this case. Were you prevented from doing discovery? We weren't prevented from doing discovery. Did you ask for time to get more discovery? We have asked for more time for discovery at oral argument, and we asked for the opportunity. Did you file a Rule 56F motion? No, Your Honor. What we first did was we filed this motion for summary judgment. The plaintiffs filed it on the specific issue of whether or not the applicability of the privilege and the Constitution and whether or not there's a recognized constitutional claim filed. Defendants responded with their motion for dismissal on all actions. Now, this occurred. Our motion was originally filed within three months after the time we had the last answer in. So we tried to move as expeditiously as possible to address those specific issues. In this context, we feel that we should have had the opportunity to further develop the facts on reckless. Let me just understand this. You moved for summary judgment, right? Yes, Your Honor. Partial summary judgment. Partial summary judgment. And the timing of that was within your control. Correct, Your Honor. So when the whole ball of wax got thrown in, I mean, what did you expect would happen when you filed the motion for summary judgment? Didn't you expect that, in fact, everything would be on the table? Your Honor, obviously, we can't control when the defendants will file a motion for summary judgment, but we believe it's appropriate that when defendants bring a motion for summary judgment on all issues very, very early in the stage, that we would have the opportunity to conduct the factual investigation of the fleshed-out. You didn't ask for that opportunity by filing a Rule 54 motion. You should have asked for time then. If you needed more discovery, you should have asked for it. The motion, once filed, is going to go its course and it's going to be heard. Absolutely, Your Honor. And that is why we filed the motion for partial judgment in trying to narrow these issues. You're right. They respond with the motion. But when they file a motion for summary judgment, the result of which could be dismissal of the whole case, it seems to me you have to alert the judge and say, under Rule 56-F, stop. My motion is limited, but they want to have the whole case heard. We need more time for discovery because that involves different issues. I don't know if it does or doesn't. You'd have to explain why you would need discovery and then the judge could put all that in front of them and figure it out. But we can't. Here you're saying it was premature, but there was really no opportunity in the district court for a judge to consider discovery in response to their motion. Correct, Your Honor. The district court did not have the discovery before them or the complete facts before them in order to make their decision. We asked for time in response to their motion for summary judgment. That is when we made that requested oral argument. Let me ask you, in what form did you ask for more time? Did you file any piece of paper asking for more time? No. We did not file in response to their motion for summary judgment. That was requested at argument. Are you appealing in some fashion the failure to be able to proceed with more discovery? Yes, Your Honor. And on what basis are you appealing that? I mean, what's the order or the motion that's being appealed in that regard in the blue brief? I believe it. It was in your brief. I didn't see it in your brief. I believe the district court orally denied that motion. The district court did not, in their written order, they did not address a number of issues. Excuse me. In your brief, that issue isn't raised in your brief. Or did I miss it? In the brief to this court. Yes. The brief to the underlying case. The blue brief to this court. If you don't raise it in the brief, we can't consider it. I mean, I didn't see that issue in your brief to this court. That's why I'm just trying to unscramble it. In the brief to this court, we argue that on recklessness, there are three facts that exist. The errors made by the typist in this particular case, there were two errors and the lack of any action of verification. We argued in our brief to this court that these are, in essence, my words now are the tip of the iceberg and we should be allowed to flesh out these further facts. These facts alone are sufficient to give this court. Yes, but how do we know they're facts? Excuse me, Your Honor. How do we know they are facts? In our briefing to the court, from the excerpts of record, they're indicated. She made errors such as there's no evidence of following the, she made very specific errors of typing in her report exactly contradictory statements on top of it. So your argument is just on the face of it, those are reckless? On the face of it, she made at least two errors. But normally, you know, normally lower administrative officials like the clerks, et cetera, are entitled to qualified immunity, are they not? Normally, Your Honor, the Anton Byers case addresses this. Right. It's a sliding scale in essence. A judge, absolute immunity. I have some familiarity with that because I argued it in the Supreme Court. But the question you have is you're saying that the judge should have figured out just by the virtue of the typographical error that a question of fact was raised. Yes, Your Honor. We believe that there's a question of fact as to whether or not actual malice occurred through recklessness. I note that I have two minutes. Well, what are the facts that are in dispute that make it a material disputed issue of fact? Where is the disputed issue of fact? What are the facts that make it disputed and where is it material? Well, the fact that the typist made errors is not disputed. The fact that the typist made errors is the only evidence that we have that she acted recklessly. On that basis, we believe the district court was in error in not determining or allowing a trier fact to determine whether or not she acted recklessly and, therefore, with malice. I don't understand if you're saying that there's a disputed issue of fact that she made the wrong decision as to those disputed facts, or if you're saying there's more facts that she didn't consider. I don't quite understand where you see what her specific, the judge's specific error was in ruling on the motion on malice. I believe the district court's specific error was in not finding malice through recklessness, because the uncontested facts, the uncontested facts are that she made errors. We also believe that that should be submitted to the trier of fact. There was no fake. So the fact that she made error was enough to find malice, then? To find malice through recklessness. Okay. All right. You may want to reserve the remaining time. I'd like to do so. Thank you, Your Honor. Thank you. Thank you, Your Honor. May it please the court. My name is Dan Lloyd on behalf of Wally Lingvall, the Clallam County Clerk's Office, and Sheriff's Office. My colleague, Captain Hendricks, is here on behalf of the Washington State and Washington State Patrol, and will be happy to answer any questions the court has in regards to those two entities. We have ten minutes, and we have decided to divide our time. I will take seven minutes, she will take three, and we will do our best to adhere to that division. Several reasons exist why this court ought to affirm all of which are outlined in the briefs of the appellees. In my limited time before the court, I will address first why Mr. Tolan mistakenly relies on the doctrine of judicial immunity to explain why Ms. Lingvall, the lone individual defendant, was not privileged in her communication in the official disposition report. And second, I will explain why Mr. Tolan mistakenly compounds his error by relying on Washington's criminal libel statute to argue that malice is imputed when Washington law provides to the contrary. But before I do, Mr. Tolan brought this case under the jurisdiction of 42 U.S.C. Section 1983 Interfederal Question. That argument, as Judge Bonetti correctly pointed out during my adversary's argument, was not argued anywhere in the brief. So under Greenwood v. FAA, that argument is waived and that claim is no longer before the court. The only claim that was preserved was defamation. Mr. Tolan argues that the defamation claim should proceed because Ms. Lingvall was either not privileged in her communication or she abused her privilege through malice. When my adversary was arguing here a second ago, saying that she made typing errors, he was referring to Tammy Wooldridge, the courtroom clerk who was not an individual defendant. And while Mr. Tolan may complain that there was not an opportunity to bring Ms. Wooldridge into the case, there was never any Rule 15 motion for Lee to amend the complaint and to add her as a defendant. So there was no abuse of discretion in denying a Rule 15 motion when a Rule 15 motion was never brought. So really the only individual defendant was Molly Lingvall, who in 1986 published a disposition report pursuant to her official duties as the deputy clerk for Clallan County. Mr. Tolan argues under the Antwon v. Byers and Anderson case that Ms. Lingvall is not a judge, therefore no judicial immunity, therefore no privilege. Judicial immunity is a separate doctrine from privilege under defamation. Privilege is afforded under the Restatement Second of Torts, which Washington follows, Section 598, in which the court – the district court relied on, is any defamatory communication required or permitted in the performance of his or her official duties. Ms. Lingvall, as courtroom clerk and as the record provides, is required to produce disposition reports to the State patrol. Assuming that the immunity is available here as a defense, which it seems to me it is, and recognizing that the typist herself has not been made a defendant, if she was reckless, and that's an if, I don't ask you to concede, if the typist was reckless, for purposes of this case, would that be imputed to the employer? No. Why not? It would not. Because if the – the recklessness that Mr. Tolan argues is that Ms. Lingvall failed to investigate the veracity. First of all, I guess I should answer your question. Ms. Lingvall is not Ms. Woldridge, the typist. I understand that. So I'm asking, would the recklessness, which I'm assuming only for purposes of a question, would the recklessness of the employee be imputed to the employer? No, because recklessness means that the actual speaker, the actual defendant, entertained serious doubts to the statement's truth, and that has to be shown to the speaker, the actual speaker who has been sued for defamation. So Ms. Lingvall being that speaker, who is actually republishing court records, which is a separate privilege which is afforded, that Ms. Lingvall, who is simply republishing that, can rely on official court proceedings. And that's actually what happened in the New York Times v. Sullivan case. What then, as a practical matter, it's a serious problem, of course, to have your criminal history misrepresented or mistyped. So if once that happens, everybody up the chain is sanitized, so to speak, at least on a defamation claim, in your view, what are the mechanisms that the agencies have to either avoid or to fix erroneous reporting? By agencies, are you referring to the court system in general? No, the agencies that you represent, the Clallam County agencies, correct? The Superior Court and the Sheriff's Office, yes. As far as a mechanism, I don't know of one in place, but as far as being a duty to verify and failure to verify being evidence of recklessness to overcome privilege, the Washington Supreme Court has rejected that argument, specifically in ---- So you don't know that there's anything in place. Once it happens, that's it. Mistakes are made, so to speak, and then the consequences, there's no mechanism to correct those. Oh, I'm sorry. No, there is a mechanism, absolutely, under RCW 1097 and Washington Administrative Code 44620. So it relies on the defendant or the individual himself? Is that right? Yes, to correct any erroneous ---- if there is an erroneous information in the person's criminal history, then that person has a right to bring an action before the Superior Court and have that corrected. And because that person comes before the court and would be aware or ---- Yes, but see, in this case, the person wasn't aware because taking everything at face value, there was no conviction of guilty. He walks out of there free as a bird and, unbeknownst to him, entered into the file that says guilty. And he has no reason whatsoever to suspect that they've made this mistake. So he finds it out, you know, as the narrative of this case years and years later, and there's at least a possibility that he's right, that certain bad things happened to him as a result of this. What bothers him about this case is that it seems to me that he did what he was supposed to do. You guys didn't do what you were supposed to do. You guys, meaning the entirety. I'm not trying to be specific and careful and nuanced about where I'm assigning blame, but it sounds to me that he's blameless and he suffered some consequences of a mistake. To say that he's blameless actually does not coincide with the record because he ---- the record does show that he admitted to violating the restraining order. He booked himself. He was booked by arrest, and he was escorted to the Superior Court in handcuffs. So I guess what I mean to say is blameless. He's blameless with respect to what happened. What happened in court happened in court. He paid whatever consequences were necessary there. But then as soon as your ---- as soon as the typist puts the erroneous information into the record that he's guilty, it seems to me he's entirely blameless. What's he supposed to do? He's supposed to check the records when nothing, as far as he knows, adverse happened that would make him guilty? He's supposed to just check and see, well, did they make a mistake and put it in the file that I'm guilty? For defamation claim, he does that. I guess he would have to show that under Washington law that, yes, that criminal record is false. And it's his burden to show that. As far as him not being on notice on that, that conflicts with the single publication rule, which I discussed in my brief, that once something is published on mass media, the world's put on notice, including the plaintiff. Has anybody done anything ---- I mean, this is not sort of normal in American legal proceedings and so on. Has anybody apologized to him? I don't know. Do you think he's owed an apology? Given that he violated the restraining order himself, no. Not for that, but for the mistake that got put in his record. Assuming it was a mistake, he probably is owed an apology. Well, how can you say it's not a mistake when it's later expunged on the basis that it was a mistake? Because the record shows that what happened is Chris James, the Clown County Sheriff, who was contacted by Mr. Tolan, looked for the criminal file, tried to find it, and couldn't find it. It was misfiled in the civil docket. Okay? And that's why that record showing that he was arrested, he did appear before the court, and was sentenced to time served, that's why that Ms. James couldn't find it and followed up the next day and said, you ought to expunge this. She found out later that it was filed in civil, which explains why she requested the expungement. He was, in fact, convicted. Excuse me? He was, in fact, convicted of violating the TRO. Yes. And if it had been filed right, probably then the recording of the minute order and the database recording would have been correct. Very true. I think that's what I thought, because what you just told me affirms what I thought I read. That is, it was just misfiled. So they just expunged it. They didn't go back and try to find the judge or anything like that. They just expunged the record based upon that 10-day notice he gave to the, it was the highway. State patrol. State patrol. Yes. Okay. Your time has expired. Yeah, I have 30 seconds, and I'd like to leave whatever remaining time I have for this. I'm sure that your co-counsel will appreciate that. In order to preserve some comedy between the state and the county, I'm going to give Ms. Hendricks two minutes, because this is what always happens when people split their time. The first person gets questions, and then they use it all up through no fault of their own. He owes you lunch. Yeah. He does. He owes you lunch. Two minutes. May it please the Court. My name is Catherine Hendricks, and I'm here this morning on behalf of the Washington State Patrol. John Tolan asserted two causes of action against the State of Washington, defamation and negligence in the patrol's handling of Mr. Tolan's request that his criminal record be expunged. The Washington State Patrol joins in the arguments made by Clallam County, both the written arguments and the oral arguments that have taken the time of the Court. And so I've come primarily to respond to the Court's questions as they specifically relate to the patrol and its role in this case, because certainly its role is very modest, and the questions you have are the only ones I wanted to answer. It appears not. Thank you. You just lost your lunch. I guess you didn't need it. You didn't need your two minutes, maybe, so. No, I still think you ought to get lunch. Thank you. What John Tolan did, as soon as he did find out about this, which was a result of his looking for work as a real estate agent, he had to do the FBI report. That's when it popped up, was to hop into unbelievable action. He not only immediately made calls to Clallam County, to the sheriff, to the Washington State Patrol, to the FBI. He's got a stack of notebooks of communications. You know, I might have been laboring under a misapprehension of fact. Is, in fact, the notation of guilty correct, and it was just a filing error that they didn't do, and therefore it was expunged? Do you concede that? Your original perception is correct. There was never a trial. John Tolan was never the ---- That's not the issue. After the proceeding, he was found guilty of violating the TRO. And the proceeding wasn't dismissed, was it? Incorrect, Your Honor. I do not believe there was not a proceeding as to whether or not he violated the TRO. How can we believe? What does the record show? Didn't they find the original conviction record after this was over? No. It has never been found. We're being ---- So Console was in error when he told us that. Correct. But to my understanding, we're being asked to prove he was never convicted. No, no. That's not what I'm asking. And I think, if I'm correct with Judge Fletcher, there was another record, whatever the record was, that was filed in the civil section. They expunged the record that it was complained of, but then they found the record of the trial proceeding, TRO proceeding, in the civil records. And from what Console said, it did show that there was a proceeding, and he was found guilty of violating the TRO. Now, you say that didn't exist. Correct. Okay. I believe that's completely incorrect, Your Honor. Okay. Thank you. Your time has expired. Thank you, Counsel, for your arguments. The case of Tolan v. Washington is submitted. The next case for argument this morning will be United States v. Kelly Falcon. Thank you, Your Honor.
judges: Brunetti, McKeown, W. Fletcher